Pearson, J.
dissentiente. The deed of gift was signed and sealed in the presence of two, who signed their names as witnesses, but the paper was not delivered in their presence ; and, if it was delivered at all, the delivery was made some time afterwards to the wife of the donor, who alone proved the delivery after his death, when it was registered.
The act of 1806 requires a subscribing witness to all deeds of gift for slaves. To hold, that in this case there is a subscribing witness to the deed, is, in my opinion, contrary to the meaning and intent of that Statute, and I am forced to entei my dissent
“A deed is a writing on paper or parchment sealed and delivered.” Signing is now made also necessary in most cases by Statutes. A subscribing witness to a deed is one *218 who sees it signed, sealed and delivered, or hears it acknowledged, and signs his name as a witness, at the instance of the maker — he is a witness provided by law to guard a* gainst fraud and perjury.
One, therefore, who sees a paper signed and sealed, and signs his name as a witness of these two facts, but who is unable to prove its final consummation as a deed by delivery, does not come within the above definition of a subscribing witness to the deed ; and, therefore, the deed in this case has not a subscribing witness as required by the Statute.
What reason can be assigned," why the Statute should seek to guard against fraud and perjury in reference to two of the acts necessary to make a deed, and provide no such guard in reference to the third, which is the final and most important act, and the one, about which controversy is ■most apt to arise, and as to which a safeguard is most needed, -apd fraud and perjury most easily perpetrated ? As to -the-signing, an attempt at perjury may usually be detected by the handwriting. As to the sealing, that, since the use of a mere scrawl, amounts to but little. The delivery is the act most exposed to be procured by fraud or to be proven by perjury. It seems to me a strange construction, by which the Statute is made to require a witness as to the former, to sign the paper at the instance of the donor, and yet to provide no witness as to the fact, that the delivery was his deliberate and well considered act.
The particular facts of this case show, that such a construction makes the Statute a dead letter, so far as regards ■any useful purpose. It is clear from1 what the donor said to the witness, about his not wishing the deed proven, some two years after it was signed, that what he did was by the importunity of his wife to give her child a preference over ■his other children, and he was reluctant to do it. There was, then, a necessity of clear proof, that he made the delivery, as to which there is no evidence, but that of the *219 wife. Suppose, under the decision of Hester v Hester, as qualified by Jolly’s case,” 3 Dev. and Bat., 110, she was a competent witness after her husband’s death, she certainly appeared in a “ most questionable shapeand if it be wise to require a “ witness of the law” in any case, this is that case.
' The majority of the Court feel bound by Vines v Bvovm-rigg. The reasoning in that case is unsatisfactory and inconclusive, and I am persuaded, that the decision entirely destroys the utility of the Statute, and therefore do not feel at liberty to follow it.
The learned Judge, who delivered the opinion, devotes more than three fourths of it to a question, which was not controverted, viz : whether, on the trial, the execution of the deed of gift must be proven, or such proof is dispensed with by the ex parte probate and registration. At the close of the opinion, he asserts the proposition, that, “if A. is a subscribing witness to a writing, evidencing a gift of slaves, saw it signed and sealed, but could not prove its delivery, then B., who is not a subscribing witness, may be introduced to prove the delivery.” He cites two English cases' which establish this proposition, that, under the Statute of wills, if two of the three, who purport to be attesting witnesses, deny their attestation, and the fact of their being attesting -witnesses is established by the other attesting witness, who knew the fact, that they did attest the will, such proof satisfies the Statute; for, otherwise, any will might be defeated by perjury. Hence, he infers, that, if a subscribing witness to a deed of gift denies the fact of his being a subscribing witness, and thus perjures himself, the fact of his being a subscribing witness may be established by other witnesses. This is a correct conclusion. And so, if the subscribing witness cannot prove the delivery from the want of memory, other witnesses may prove, that he did in fact witness the delivery as well as the signing and the sealing. But where there is no perjury and no want of *220 memory, and the fact is, that he did not witness the delivery, the inference from the above premises, that other witnesses may prove, not that he did witness the deed, but that the deed was delivered in his absence and without bis knowledge, is a “ non sequiturand to assume, that he is a subscribing witness, is a “petitio principii.” For, whether, under the facts agreed, (to wit, he saw the paper signed and sealed, but did not see or know of its delivery,) he is a subscribing witness to the deed or not, within the meaning of the law, was the very question to be decided.
In the case of Andrews v. Shaw 4 Dev. 70, which was decided at the same term, Vines v. Brownrigg is incidentally referred to and approved. But Vines v. Brownrigg is the only case decided on the point, and the question is, does that give to the Statute its true construction ? The question, whether a writing attested by a witness subscribing, the same, accompanied by an actual delivery of the slave, passes the title, does not arise; for, here there was no delivery of the slave and a deed of gift was necessary.
The above was submitted to the Court before the opinion of the majority was bled, as my ground for not following the case of Vines v. Brownrigg.
First: My impression was, that Andrews v. Shaw did not present the point. I therefore treated it as a dictum, and not a decision; because in that case the subscribing witness saw the deed signed and sealed, and heard it acknowledged by the maker, and was directed in his presence to hand it to the attorney, who drafted it. This, I thought, made him a witness of the “delivery,” as well as the signing and sealing, and according to my own definition, he was a subscribing witness to the deed. But suppose it is in point, it was decided at the same term, upon the same reasoning, and is a mere repetition.
Second: To support the case, it is said : “But in common speech execution means, generally, signing and sealing 3 paper, as contradistinguished from its delivery. It seems *221 plain, that it is to be understood in that sense in Statutes, which require subscribing witnesses; for, no one ever, thought of delivering a deed before its attestation.” To this my reply is, that execution means “finishing, completing an actand as delivery is a substantial, not a mere technical, requisite, the execution of a deed means, that it has been “ delivered,” as well as signed and sealed ; and, although it is frequently the case, that the maker of a deed, after signing and sealing the paper, requests some one to attest it and then delivers it to the other party as his deed ; yet this request is generally made with the understanding,, that it is then and there to be delivei’ed or acknowledged in the presence of the attesting witness. Yet it is also, frequently the case, that the maker, after signing and sealing, acknowledges the delivery, and requests some one to. witness it as his deed; which being done, the other party, takes possession of it, as a thing delivered to him before the attestation. The truth is, whether the attestation is before or after the delivery, the acts are understood to be contemporaneous and continuous, and form a part of the “ res gesta.” It makes tno difference which comes first, so that they both come. But, I apprehend, it is quite unusual for one to witness a paper as a deed, when the maker has no present purpose of making a delivery ; and except in the case of Vines v. Brownrigg, and the present case, I question if such a thing has occurred within the last twenty years. The thing is so unusual, that from the fact of there being a subscribing witness, if he is dead, proof of his handwriting is deemed in law sufficient evidence for a jury to infer the delivery.
Third: The objection, that “no deed could be delivered as an escrow, unless the same person happened to be the witness to the signing and' sealing and to both the first delivery and the final one” is met by the fact, that there is only one. delivery, which is, when the maker parts with the possession and control of the paper. If there be a witness to the *222 signing and sealing, and he also is a witness to the fact, that the maker delivered the paper as his deed, to be handed to a third person if a certain thing is done, .then the Statute has been complied with, and if the thing is done, it is ' the deed of the maker from the time of its delivery, as an es crow. Hall v. Harris, 5 Ire. Eq. 303.
Fourth : I am so unfortunate as not to feel the force of the illustration from the Statute of Devises.
Fifth: Vines v. Brownrigg and Andrews v. Shaw were decided in 1833 and have been “ fully” acquiesced in by the profession and have received the sanction of the Legislature; for, in 1836, when the Statutes were revised, no change was made in the law.
My reply is first: I presume ho case of the kind has happened, except the present, since 1833. At all events, Vines v. Brownrigg and Andrews v. Shaw were not cited on either side in the argument.
Second: Wagstaff v. Smith was decided in 1832 — it was over-ruled in 1833 — and the law was then decided to be, that, as between tenants in common, an account for the profits was cut oif by the Statute of limitations, except for the last three years, (it is proper to say, this latter decision was not reported from some cause or other, ’till 1845). Still, the decision was one of importance and bore upon questions occurring almost every term. It was, of course, known to the profession, and we must presume it was known to the members of the Legislature, not. only in 1836, but in 1834-37 — and up to 1849, December Term, when Northcot v. Casper 6 Ire. Eq. 403, “overruled it,” upon the ground, that it had put a construction on the act of 1715, Rev. Stat. ch, 65, sec. 9; which was contrary to the “reason of the thing,” and contrary to previous authorities, the acquiescence of the profession and of the Legislature “ to the contrary notwithstanding.”
• My idea is, that “ law” is not a mere list of decided casés( but a “ liberal science,” based on general principles'and cor-; *223 rect reasoning. Cases are mere evidences of what the law is; and if a case is found to be unsupported by principle and “ the reason of the thing,” the Court is no more bound to fpllow it, than is a jury bound to believe a witness, who is discredited by proof of his bad character, or his demeanor or direct contradiction. In the one, there is a sworn witness : in the other, there is a decided case — both are prima facie entitled to credit, until the contrary is -made to appear. - v -
It is true,’ law should be “ fixed and steadybut it is also true, it should be “reasonable and right.” The latter, is the most important; because, without i t, the former object cannot be attained. There are two extremes — a disregard of authority, which I disclaim; and a blindfolded following of cases, which I also disclaim, as not only absurd, but impossible, (for, suppose a Corn#, in attempting to follow a case, should “ miss the point,” which case is then to be followed ?) There is a medium, which I try to adhere to— take a comprehensive view of all of the cases from the “ year books” down to the present time — has not this middle course been adopted and acted on throughout ? Is it not supported by good sense and general practice ? , Let a case be taken, as settling the law, prima facie ; but if it is shown, not to be supported by principle and “ the reason of the thing,” let it be over-ruled — the sooner the better; for, if the error is allowed to spread, it may insinuate itself into so many parts, and become so much ramified, as to make it impossible to eradicate it, without doing more harm than good. But if the seed has not spread too much, pull it up and throw it away.
Pee Cueiam Judgment affirmed.